**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| LORI J. MULLEN, | ) | |
| | ) | |
|     Plaintiff(s), | ) | |
| | ) | |
|     vs. | ) | Case No. 2:19-cv-00089 SRC |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
|     Defendant(s). | ) | |

**Memorandum and Order**

This matter comes before the Court on Plaintiff Lori J. Mullen's request for judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying Mullen's application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. The Court affirms the Commissioner's decision.

**I.      Procedural history**

Mullen filed her application for benefits on November 18, 2016. Tr. 10. The Social Security Administration initially denied her application on February 7, 2017. Tr. 90-96. Mullen asked for a hearing before an ALJ on March 6, 2017 and the ALJ held a hearing on September 21, 2018. Tr. 25, 99-100. The ALJ denied Mullen's application in a decision dated December 17, 2018. Tr. 10-20. On November 19, 2019, the Appeals Council denied Mullen's request for review. Tr. 1-3. As such, the ALJ's decision stands as the final decision of the Commissioner.

**II.     Decision of the ALJ**

The ALJ determined that Mullen has not engaged in substantial gainful activity from her alleged on-set date of May 22, 2015 through June 30, 2016, known as the date last insured,

which is the final day of the last quarter she met insured status for disability.  Tr. 13.  The ALJ

found that Mullen has severe impairments of ischemic heart disease and coronary artery disease

with a history of cardiac arrest status post-stent placement, hypertension, peripheral vascular

disease, hearing loss, connective tissue disorder, and degenerative disc disease.  *Id*.  The ALJ

found that Mullen does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  Tr. 13-14.  After considering the entire record, the ALJ determined that Mullen had

the residual functional capacity to perform light work but with the following limitations: she can

never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, stoop, kneel,

crouch, and crawl; and could have occasional exposure to extreme cold, extreme heat, and

excessive humidity, but needed to avoid concentrated exposure to excessive vibration and

unprotected heights.  Tr. 14.  The ALJ found that Mullen could work in an environment with a

moderate noise level, such as a business office, department store, or grocery store with light

traffic noise.  *Id*.

The ALJ found that Mullen could not perform any past relevant work.  Tr. 18.  Mullen

was 52 years old on the date she filed the application, meaning she constituted an "individual

closely approaching advanced age."  *Id*.  Mullen has at least a high school education and can

communicate in English.  *Id*.  After considering Mullen's age, education, work experience, and

RFC, the ALJ found that jobs exist in significant numbers in the national economy that Mullen

can perform, including housekeeper, mail clerk, and sorter.  Tr. 18-19.  Thus, the ALJ concluded

that Mullen "was not under a disability."  Tr. 19.  Mullen appeals, arguing a lack of substantial

evidence to support the Commissioner's decision.

### III.   Legal standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability.  20 C.F.R. § 416.920(a)(1).  First, the Commissioner considers the claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities."  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively

disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations."  *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1).  While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC."  *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).  Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion."  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3) (emphasis added).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner.  *See Brock v. Astrue*,

674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant.  *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision.  42 U.S.C. §§ 405(g); 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id.*  Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision."  *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016).  The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence."  *Id.*  The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016).

## IV.    Discussion

As noted above, the ALJ determined that Mullen retained the RFC to perform light work with certain limitations, and that she could perform work that exists in significant numbers in the national economy.  Mullen argues that the Court should remand because the ALJ failed to give

5

the appropriate weight to Dr. Lent Johnson's medical opinion and that substantial evidence does not support the ALJ's RFC determination.

### A.       The ALJ afforded appropriate weight to Dr. Lent Johnson's medical opinion

#### 1.  Legal standard for medical opinions

ALJs must weigh all medical opinions, whether by treating or consultative examiners, based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c) (2017). "While an ALJ must consider all of the factors set forth in 20 CFR § 404.1527(d),[1] he need not explicitly address each of the factors."  *Derda v. Astrue*, No. 4:09CV01847 AGF, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 31, 2011) (collecting cases).  Generally, ALJs should give a treating physician's opinion controlling weight, but they "may elect under certain circumstances not to give [the] opinion controlling weight."  *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (citation omitted).  "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation."  *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) (citation omitted).  "Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand."  *O'Keefe v. Saul*, No. 2:19-CV-00043 SRC,

---

[1] The 2011 version of 20 C.F.R. § 404.1527, at issue in *Derda*, listed the factors for ALJs to consider in determining weight to give medical opinions in section (d).  The regulation has been amended and the latest version lists the factors in section (c).

2020 WL 6287405, at *3 (E.D. Mo. Oct. 27, 2020) (quoting *Anderson v. Barnhart*, 312 F. Supp. 2d 1187, 1194 (E.D. Mo. 2004)).

Mullen argues that the ALJ erred in failing to give proper weight to Dr. Lent Johnson's opinion because she did not properly evaluate the opinion under the factors listed in 20 C.F.R. § 404.1527.  Doc. 11 at 10.  Dr. Johnson completed a medical source statement in 2018.  Tr. 732-35.  He concluded that Mullen could lift less than ten pounds, sit for a total of four hours, and stand and sit for ten minutes at a time for a total of less than two hours.  Tr. 732.  Dr. Johnson further opined that Mullen could never crouch or climb ladders, must avoid all exposure to temperature extremes and pulmonary irritants, and avoid concentrated exposure to high humidity and perfumes.  *Id*. at 733-34.  As summarized by the ALJ, Dr. Johnson's opinion limited Mullen to significantly less than sedentary exertion with multiple work absences, at least twenty-five percent off-task behavior, and unscheduled breaks for weakness, fatigue and pain.  Tr. 17.

The ALJ gave Dr. Johnson's opinion little weight.  Tr. 17.  She explained that while Dr. Johnson cited his clinical observations and Mullen's medical history, including dyspnea with exertion, to support his opinion, his opinion did not correspond with:

> the vast majority of her exams, negative six-minute walk test, mild to normal finding on her echocardiogram and nerve conduction studies, positive response to cardiac and vascular care, wide range of activities of daily living even after the date last insured, and lack of ongoing care for connective tissue disorder or degenerative disc disease until well after the date last insured.

*Id*.  Additionally, rather than relying on objective measures, the ALJ found that Dr. Johnson's opinion appeared largely based on Mullen's subjective complaints.  *Id*.

The Court finds that the ALJ properly considered the regulatory factors in assigning little weight to Dr. Johnson's opinion.  The ALJ gave the opinion little weight because it was inconsistent with the medical evidence in the record, which serves as an appropriate ground to

discount medical opinion testimony.  *See* 20 C.F.R. § 404.1527(c)(4) (2017) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) ("It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013–14 (8th Cir. 2000)); *see also Goff v. Barnhart*, 421 F.3d 785, 790–91 (8th Cir. 2005) (finding that inconsistency with other substantial evidence alone is a sufficient basis upon which an ALJ may discount a physician's opinion (citation omitted)).

As described by the ALJ, Dr. Johnson's opinion conflicted with other medical evidence. For example, Dr. Johnson relied on his clinical observations that Mullen had dyspnea on exertion in reaching his opinion that she had environmental limitations.  Tr. 17, 734.  However, a significant amount of the medical records show that Mullen denied dyspnea.  Tr. 346, 433, 439, 468, 475, 480, 592, 594, 656, 718-19.  Additionally, Mullen had described intermittent leg pain in June 2016 that was treated with a stent placement. Tr. 460, 365.  Following the placement of the stent, Mullen stated that she was "doing pretty good," Tr. 652, and denied any leg claudication.  Tr. 16, 480, 592, 656, 718-19.

Mullen attempts to counter the ALJ's conclusion that Dr. Johnson did not rely on his clinical observations by citing to portions of the record that contain Dr. Johnson's notes from his observations or from others on this medical team.  Doc. 11 at 10.  However, while Dr. Johnson did state that he relied on his clinical observations and Mullen's medical history in reaching his opinion, Tr. 17, he did not specify which clinical observations he relied upon.  By failing to do so, the ALJ could properly assign him less weight because "the more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory

8

findings, the more weight ALJs will give to that opinion."  20 C.F.R. § 404.1527(c)(3) (2017).
Moreover, the medical records cited by Mullen merely establish that Dr. Johnson may have
relied upon his clinical observations.  Even assuming Dr. Johnson did rely on the clinical
observations cited by Mullen, the fact remains that his medical opinion was inconsistent with
other medical evidence in the record.  Accordingly, the ALJ properly afforded his opinion little
weight.

Lastly, Mullen argues that the ALJ erred by failing to consider that Dr. Johnson believed
that Mullen was disabled as of August 30, 2014.  Doc. 11 at 13.  However, "a treating
physician's opinion as to whether a patient is disabled or unable to work is not dispositive
because these are 'issues reserved to the Commissioner and are not the type of opinions which
receive controlling weight.'" *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019) (quoting
*Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010)).  Thus, Dr. Johnson's opinion that Mullen
was disabled in 2014 is not entitled to controlling weight.

Even if this Court found substantial medical evidence in the record supporting Dr.
Johnson's opinion, it cannot remand simply because it "would have reached a different
conclusion than the ALJ or because substantial evidence supports a contrary conclusion." *Igo v.
Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (citing *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th
Cir. 2014)); *see also Goff*, 421 F.3d at 789 ("If, after reviewing the record, the court finds it is
possible to draw two inconsistent positions from the evidence and one of those positions
represents the ALJ's findings, the court must affirm the ALJ's decision.").  Rather, this Court
must affirm if the ALJ's finding "falls within the available zone of choice[.]" *Schouten v.
Berryhill*, 685 F. App'x 500, 501 (8th Cir. 2017) (citation omitted).  Here, for the reasons
outlined above, the ALJ found inconsistencies between Dr. Johnson's opinion and the other

9

medical evidence in the record, and substantial evidence supports the ALJ's finding.  Because such a finding "falls within the available zone of choice," the ALJ permissibly afforded the opinion little weight.

### B.      Substantial evidence supports the ALJ's RFC determination

Mullen argues that substantial evidence does not support the ALJ's RFC determination because she created the RFC determination "from whole cloth."   Doc. 11 at 13.  Mullen contends that the ALJ formulated the RFC assessment by making her own independent medical findings and impermissibly relying exclusively on the opinion of a non-treating, non-examining physician.  *Id*.  Mullen also argues that the ALJ's conclusion that Mullen could perform light work lacked sufficient support in the record because the ALJ relied on a single six-minute walk test and failed to account for Warren's subjective complaints of pain and inability to perform tasks necessary to work.

Mullen's arguments lack merit.  Consistent with the Eighth Circuit's instructions, the ALJ determined Mullen's RFC by considering "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitation." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000)) (alterations in original).  Accordingly, as described in detail below, the ALJ's RFC determination was not created from "whole cloth"; rather, substantial evidence supports the ALJ's RFC determination.

With ALJs primarily responsible for assessing a claimant's credibility, the ALJ appropriately began the RFC determination with an evaluation of Mullen's credibility.  *See Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003) (finding a claimant's credibility is primarily a matter for the ALJ to decide); *see also Holmstrom v. Massanari*, 270 F.3d 715, 721

(8th Cir. 2001) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." (citation omitted)).  In analyzing a claimant's subjective complaints, the regulations instruct ALJs to consider the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the condition; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication; (6) any measures you use or have used to relieve your pain or other symptoms; other factors concerning the claimant's functional restrictions.  20 C.F.R. § 404.1529(3).  Courts also consider the claimant's "relevant work history and the absence of objective medical evidence to support the complaints."  *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted).  The above factors stem from the Eighth Circuit's decision in *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984).  *Id.*  "While ALJs must acknowledge and consider these so-called *Polaski* factors before discounting a claimant's subjective complaints, [the Eighth Circuit] ha[s] held that ALJs need not explicitly discuss each *Polaski* factor.  ALJs may discount claimants' complaints if there are inconsistencies in the record as a whole, and [courts] will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so."  *Id.*  (citations and internal quotations omitted).

The Court briefly summarizes Mullen's allegations.  She stated she could not work due to peripheral vascular disease, heart problems, and connective tissue disorder.  Tr. 15.  Mullen quit her last job because of leg and foot pain.  *Id.*  She experienced an episode of cardiac arrest in 2014, but recovered.  *Id.*  After the alleged onset date of May 22, 2015, Mullen felt she would pass out with foot burning and numbness, pain to the bone, and sweating due to the peripheral vascular disease.  *Id.*  Mullen alleged she could not stand or walk for long periods and had problems climbing stairs and walking outside the home.  *Id.*  In specifying the treatment she

received, Mullen stated that she was not diagnosed with peripheral vascular disease until a year after the amended onset date because of scheduling issues and delayed testing. *Id*. She cut back smoking "a little" from two packs to one pack per day, but did not quit until smoking two weeks before the hearing. *Id*. In 2015-2016, she spent half the day elevating the legs to prevent her feet from turning black due to performing her daily activities. *Id*. Before her stent surgery, she could stand twenty-to-twenty-five minutes at a time, be on her feet one-hour total in an eight-hour day, and sit twenty minutes at a time. *Id*.

The ALJ found that Mullen's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 15. The ALJ then proceeded to discount Mullen's allegations using certain *Polaski* factors. In doing so, the ALJ also set forth the evidence supporting the RFC determination that she reached.

First, the ALJ noted that the medical evidence did not support Mullen's allegations. In August 2014, Mullen had a cardiac arrest that required a stent in her left circumflex. Tr. 15, 35, 281-321. The ALJ explained that Mullen had largely normal cardiovascular exams following the stent placement. Tr. 15, 347, 379, 387, 391, 400, 415, 434, 449, 456, 469, 476, 481, 485, 488, 497, 561, 594, 601, 607, 617, 657, 661, 694, 702, 716, 719, 726. Mullen also underwent a six-minute walk test and did not require any rest or supplementary oxygen. Tr. 15, 526. Additionally, Mullen exhibited normal stance and gait, full strength, intact sensation, and normal ranges of motion. Tr. 15, 16, 383, 387, 392, 415, 448-49, 566, 574, 584, 600-01, 607, 694, 702, 726. Mullen had no edema, clubbing or cyanosis. Tr. 16, 347, 379, 383, 387, 401, 415, 434, 444, 469, 476, 481, 492, 497, 561, 566, 574, 584, 594, 607, 617, 657, 661, 694, 716, 719, 726. A November 2016 echocardiogram showed mild stenosis, mild tricuspid insufficiency, and normal

12

pulmonary artery.  Tr. 16, 553.  Lastly, Mullen's nerve conduction study on her left leg and lumbar spine returned negative results.  Tr. 16, 711.

Second, the ALJ found that Mullen's "treatment history suggested less than disabling symptoms."  Tr. 16.  After the stent placement, Mullen informed her cardiologist she was doing well and denied any chest pain, palpitations, shortness of breath, leg claudication, dyspnea, orthopnea, or fainting.  Tr. 16, 378, 384-85, 408, 433, 439, 480, 592, 594, 656, 718-19.  The ALJ noted that X-rays showed that Mullen had small bone spurs in her heels, but Mullen made no complaints and did not receive any treatment for her heels.  Tr. 13.  Mullen made an isolated complaint of leg, back, and foot pain between May 2013 and March 2016.  Tr. 16, 423.  Besides that complaint, Mullen did well without leg claudication, dyspnea, orthopnea, or chest pain or discomfort.  Tr. 16.  Additionally, despite having cardiac issues and receiving instructions to stop smoking, Mullen continued to smoke until two weeks before the administrative hearing.  Tr. 15-16, 38, 349, 380-81, 386, 388, 393, 400, 412, 426, 437, 442, 451, 469, 485, 495, 596, 599, 616, 658-59, 667, 713, 721; *see also Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) (explaining that an ALJ may consider a claimant's failure to comply with physician instructions, including failing to take prescription medications, seek treatment, and quit smoking. (citations omitted)).

In describing the treatment Mullen received, the ALJ found Mullen's allegation that she was not diagnosed with peripheral vascular disease until a year after Mullen's alleged onset date of May 22, 2015 because of scheduling issues and delayed testing unsubstantiated.  Mullen claims that in finding that her allegations were unsubstantiated, the ALJ made an improper inference from a medical record.

As Mullen states in her brief, she complained to Dr. Johnson about leg, back, and foot pain in May 2015.  Tr. 422-24.  She saw Dr. Bassem Mikhail, her cardiologist, in June 2015 and December 2015.  Tr. 433, 439.  In December 2015, Dr. Johnson noted Mullen had varicosities. Tr. 448.  In June 2016, Mullen complained of leg pain that had been ongoing for the previous six-to-twelve months and Dr. Johnson referred her to Dr. Krause and ordered an ABI test.  Tr. 459-61.  Mullen saw Dr. Krause in August 2016.  Tr. 345.  Mullen contends that because the record does not state why Dr. Mikhail did not order an ABI test to be completed sooner, the ALJ improperly assumed that because he did not order it, the test was unnecessary.  Doc. 11 at 14.

Mullen's argument misconstrues the ALJ's findings.  First, the ALJ noted that the record did not substantiate Mullen's allegations that she did not receive testing due to a delay. Significantly, Mullen does not point to anywhere in the record establishing that she had been scheduled to be tested, but had the test delayed.  Moreover, the ALJ cites to other evidence in the record establishing why the allegation was unsubstantiated.  From May 2015 to March 2016, Mullen made one complaint about leg, back, and foot pain, but otherwise did well without leg claudication.  Dr. Mikhail also assessed her as doing well.  Mullen did not report intermittent burning pain with walking until late June 2016.  The ALJ additionally explained that while Mullen alleged that in making her June 2016 complaint that she had had these symptoms for the past six-to-twelve months, those allegations were inconsistent with her exams or lack of complaints to her physicians.  Lastly, Mullen had an arterial stent placement in late 2016 which resolved her issues, suggesting her issues with claudication lasted less than twelve months.  In sum, the ALJ did not make an improper inference from a medical record.  Rather, the ALJ's review of the record found that it did not support Mullen's allegations that she had a delay in testing.

Next, the ALJ concluded that Mullen's ability to perform activities of daily living supported a finding that Mullen was not disabled.  Tr. 16.  The ALJ noted that Mullen:

> could care for her boyfriend and his son, cook meals like pasta and baked dishes daily, wash and put away dishes, do personal care with some difficulty, fold laundry, put away groceries, take out the trash every other day, clean counters, walk for transportation, shop for prescriptions twice a month, drive, manage finances, read and watch TV daily, follow instructions if spoken loud enough, and finish tasks.

*Id*; *see also Medhaug v. Astrue,* 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." (citation omitted)).  Mullen argues that the ALJ erred by failing to consider the difficulty Mullen had in performing these tasks.  Doc. 11 at 16. Specifically, Mullen argues that the ALJ failed to consider that it takes her two hours to cook and two-to-three hours to do dishes because she must take breaks and sit down.  *Id*.

The ALJ properly discounted Mullen's difficulties.  Contrary to Mullen's assertion, the ALJ considered Mullen's professed difficulties and found them inconsistent with the record.  Tr. at 16.  The ALJ stated that Mullen's "reported need to take sitting breaks with all tasks and elevate [her] legs half the day was not supported by the record as a whole, including her exams, positive response to cardiac and vascular treatment, and lack of ongoing treatment for back and joint back until well after the date last insured."  *Id*.

Finally, the ALJ addressed the medical opinion evidence, explaining the reasons why she assigned the respective weight to the various opinions.  Mullen does not challenge the weight afforded to any medical opinion other than Dr. Johnson's, which the Court addressed above.

In sum, the ALJ properly considered all evidence in the record in reaching her RFC determination.  As succinctly stated by the ALJ:

> the above residual functional capacity assessment is supported by the claimant's largely

normal exams, medical imaging, and test results; positive response to cardiac and vascular care with resolved claudication; lack of ongoing care for connective tissue disorder or degenerative disc disease until well after the date last insured; and wide range of activities of daily living even after the date last insured.

Tr. at 18.  Thus, contrary to Mullen's assertion that the ALJ reached the RFC determination from whole cloth by relying on a single walk test, exclusively on a non-treating medical physician, and without consideration for Mullen's subjective complaints, the ALJ's decision demonstrates that the she properly considered all the evidence in the record in reaching her RFC determination.  Moreover, as outlined above, substantial evidence supports the ALJ's determination.

**V.      Conclusion**

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  It does not substitute its own judgment for that of the ALJ.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007).  Having found that substantial evidence supports the ALJ's conclusions and that the ALJ correctly applied the legal standards, this Court affirms the ALJ's decision.

Accordingly, the Court affirms the decision of the Commissioner and dismisses Mullen's Complaint with prejudice.

So Ordered this 29th day of January 2021.

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**